1   ANGELA SANDERS
    PRO SE
2   601 Napa Avenue
    Rodeo, California 94572
3   Telephone: (510) 852-9320
    Email: angela.sanders13@gmail.com

4



FILED
MAR 05 2025
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Original

5           UNITED STATES BANKRUPTCY COURT

6      NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

7

8   In re                               ) Case No.: 16-40374-RLE13
                                        )
9   ANGELA ELEANOR SANDERS,             ) Chapter 13
                                        )
10          Debtor.                     ) Adversary Proceeding Case No. 25-04001 CN
                                        )
11                                      ) **FIRST AMENDED COMPLAINT**
    ANGELA ELEANOR SANDERS,             ) **PURSUANT TO FRBP 7001,**
12                                      ) FOR **PROCEEDING TO:**
            Plaintiff.                   (1) RECOVER MONEY OR PROPERTY
13                                       (Rule 7001(1)),
    v.                                    (2) DETERMINE VALIDITY, PRIORITY,
14                                       OR EXTENT OF A LIEN, OR OTHER
    VWH CAPITAL MANAGEMENT, LP;          INTEREST IN A PROPERTY
15  VRMTG ACQ, LLC;                      (Rule 7001(2)),
    VRMTG ASSET TRUST;                    (3) DETERMINE THE
16  US BANK TRUST, NA, Not in Its Individual   DISCHARGEABILITY OF A DEBT
    Capacity, but Solely as Owner Trustee for  (Rule 7001(6)),
17  VRMTG Asset Trust;                    (4) OBTAIN AN INJUNCTION OR OTHER
    FAY SERVICING, LLC;                  EQUITABLE RELIEF
18  FEDERAL HOME LOAN MORTGAGE           (Rule 7001(7)),
    CORPORATION;                          (5) SUBORDINATE ANY ALLOWED
19  Newrez LLC, doing business as Shellpoint   CLAIM OR INTEREST (**Rule 7001(8)),**
    Mortgage Servicing;                   (6) OBTAIN A DECLARATORY
20  Rithm Capital Corp.                  JUDGMENT RELATING TO ANY OF THE
    Computershare Holdings               FOREGOING (Rule 7001(9)).
21  Computershare Limited
    WELLS FARGO BANK, NA;               **DATE**: [To Be Set By Summons]
22  and Does 1 to 100.                  **TIME**: [To Be Set By Summons]
                                        **COURTROOM: 215**
23          Defendants.                 **LOCATION:**
                                        United States Bankruptcy Court
24                                      Northern District of California -
                                        Oakland Division
25                                      1300 Clay Street
                                        Oakland, CA 94604-1426
26

27

28

                        – 1 –
                FIRST AMENDED COMPLAINT

## **INTRODUCTION**

1.  Plaintiff, Angela Eleanor Sanders ("Debtor"), brings this adversary proceeding against Defendants for their improper servicing, miscrediting of payments, and issuance of conflicting promissory notes, which call into question the validity of the loan and lien on Plaintiff's property.

2.  Plaintiff seeks declaratory and injunctive relief, the recovery of miscredited funds, and a determination of lien validity. Plaintiff further seeks damages for Defendants' breach of the Chapter 13 Plan and other equitable relief as deemed appropriate by this Court.

## **COMPLAINT**

Angela Eleanor Sanders ("Debtor") files this Complaint and moves for

(1) Declaratory Relief: A court declaration to rectify payment misapplications, resolve general accounting errors, and ascertain the validity of the loan and security.

(2) Injunctive and Equitable Relief: Measures to correctly implement the Debtor's COVID-19 forbearance, amend accounting errors, and establish a viable exit strategy.

(3) Recovery of Funds: A process to reclaim any mismanaged funds or property by the servicer.

(4) Determination of Lien Validity: A proceeding to determine the legitimacy, precedence, or extent of any liens or claims on the Debtor's property.

(5) Breach of Chapter 13 Plan: Allegations that the Defendants violated the Debtor's Chapter 13 plan, with a request for suitable remedies; and

(6) Promissory Note Discrepancies: Addressing concerns over two different versions of the promissory note filed by the Defendants, questioning the loan and security's validity; and

(7) additional grounds for recovery against Defendants VRMTG Asset Trust, US Bank Trust National Association (Not in Its Individual Capacity, But as Owner Trustee for VRMTG Asset Trust), (hereinafter "VRMTG"); Fay Servicing, LLC (hereinafter "Fay"); Federal Home Loan Mortgage Corporation, (hereinafter "Freddie Mac"); Specialized Loan Servicing LLC (hereinafter "SLS"), and Wells Fargo Bank, NA (hereinafter "Wells"); The Debtor alleges as follows:

# I. JURISDICTION AND VENUE

3. This adversary proceeding arises under 11 U.S.C. §§ 105(a), 506, and 1322(b)(5), and seeks relief under 28 U.S.C. §§ 2201–2202 (Declaratory Judgment).

4. This Court has jurisdiction under **28 U.S.C. §§ 1334** and **157**, as this adversary proceeding arises in and relates to Plaintiff's bankruptcy case, Case No. 16-40374-RLE13.

5. Venue is proper under **28 U.S.C. §§ 1408 and 1409**, as the events giving rise to this proceeding occurred in this District, and Plaintiff's bankruptcy case is pending here.

6. This is a core proceeding under **28 U.S.C. § 157(b)(2)**, including but not limited to:

o **(B):** Allowance or disallowance of claims against the estate;

o **(K):** Determinations of the validity, extent, or priority of liens; and

o **(O):** Other proceedings affecting the debtor-creditor relationship.

# II. PARTIES

7. Plaintiff is the Debtor in Chapter 13 Bankruptcy Case No. 16-40374, pending in this Court, and the sole legal owner of the property located at **601 Napa Avenue, Rodeo, California 94572** (the "Subject Property").

8. Defendant **VWH Capital Management, LP** is a private investment fund manager that oversees the acquisition and management of nonperforming loans, including Plaintiff's mortgage loan.

9. Defendant **VRMTG ACQ, LLC** and Defendant **VRMTG Asset Trust** are entities associated with the ownership and servicing of Plaintiff's mortgage loan.

10. Defendant **US Bank Trust, NA**, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust, is a national trust company claiming a secured interest in the Subject Property.

11. Defendant **Fay Servicing, LLC** is the servicer of Plaintiff's mortgage loan and is responsible for loan payment accounting.

12. Defendant **Federal Home Loan Mortgage Corporation** ("Freddie Mac") is a government-

FIRST AMENDED COMPLAINT

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 3 of 37

sponsored entity that was previously involved in Plaintiff's mortgage.

13. Defendant **Specialized Loan Servicing, LLC** is a loan servicer that handled aspects of Plaintiff's loan before or during the Chapter 13 case.

14. Defendant **Wells Fargo Bank, NA** is a national banking institution that was involved in the servicing or transfer of Plaintiff's loan.

15. Plaintiff also names **Does 1–100**, whose identities are currently unknown, but who may be liable for the acts alleged herein.

### III. STATEMENT OF FACTS

**Pre-Petition Background:**

**A.   Loan Origination and Execution**

16. In the early months of 1995, Everett E. Sanders, III sought a mortgage loan through his employer's relocation program, using a 1-800 number for **The Prudential Home Mortgage Company, Inc.**, located at **100 South Fifth Street, Minneapolis, MN 55440-002**. The company was listed under **California Consumer Finance Lender License No. 9033740**; however, when the Debtor later searched official regulatory databases, no record of this license number was found, raising concerns about its validity. His assigned mortgage counselor was Tim Ubl.

17. On March 29, 1995, Everett E. Sanders, III allegedly executed and signed a Deed of Trust and Promissory Note (hereinafter, the "Note") in favor of **The Prudential Home Mortgage Company, Inc**.

18. On March 30, 1995, the loan was funded at closing. The loan was structured as:

- o   Fixed-rate mortgage with an interest rate of **8.5%**,
- o   30-year term,
- o   Maturity date of April 1, 2025.
- o   First payment due May 1, 1995, covering interest accrued from April 1, 1995.

19. At closing, Mr. Sanders allegedly signed both the Deed of Trust and Note. Additionally, he allegedly signed the Debtor's name on these documents as her alleged attorney-in-fact.

– 4 –
FIRST AMENDED COMPLAINT

**B. Loan Settlement and Initial Financial Details**

**20. Loan Number 356\*\*45REL**

21. Loan Amount: $172,000.00

22. Interest Calculation at Closing:

- o The loan was funded on March 30, 1995.
- o Interest accrued from March 30, 1995, to April 1, 1995 (2 days).

23. Interest Due at Closing: $172,000.00 \times (8.5/100 \div 365) \times 2 = 80.10$

24. Additional Fees and Payments at Settlement:

- o First-year hazard insurance: $726.00
- o Two months of escrow reserves (hazard insurance & county taxes): $537.66 *(Deposited into an escrow account)*

25. Payment Terms:

- o First payment due: May 1, 1995, in the amount of $1,591.37
- o Fixed monthly principal and interest payment: $1,322.54
- o Starting escrow payment: $268.83

26. Loan Interest Calculation & Terms:

- o Monthly interest rate multiplier: $8.5/12 = 0.00708333$
- o California escrow interest rate: 2% per year
- o Late payment grace period: 15 days
- o Late fee on payments made after the 16th: $66.13

**C. Loan Closing and Recording**

27. March 30, 1995: Loan funded at closing.

28. March 31, 1995: Loan documents recorded with the Contra Costa County Recorder's Office.

## D. **Assignment of Deed of Trust to Norwest Mortgage, Inc.**

29. On April 10. 1996, Everett and Angela Sanders, (Debtor), received a letter form The Prudential Home Mortgage Company, Inc, stating: "the servicing of your loan will be transferred to Norwest Mortgage effective May 1, 1996."

30. On May 16, 1996, an The Prudential Home Mortgage Company, Inc. assigned the Deed of Trust to Norwest Mortgage, Inc.

- **Loan Number 356\*\*45**

- Batch#1 **FHLMC** 4387

- Project 1996-44

- **Pool No. 0030270**

- Assignor No. 356\*\*45

- Property Address: 601 Napa Avenue, Rodeo, CA 94572

31. (While reviewing her loan history years later, the Debtor received conflicting information about the sale of her loan. In 2020, 2021, 2022, 2023, 2024, and 2025, various stated over the phone that Freddie Mac purchased the loan in June of 1995, (June 13, 1995), from Wells Fargo Bank, NA),

32. While attempting to correct the accounting on this loan, the Debtor discovered cancelled checks with endorsements suggesting the loan **had been held in a trust** at various times.:

- 1999: "Norwest Mortgage, Inc, as Trustee for Various Investors"

- 2001: "Wells Fargo Home Mortgage as Trustee for Various Investors"

- 2018: "Wells Fargo Bank, NA, dba Americas Svcc Co as Trustee for Various Investors"

## E. **Change in Homeownership**

33. In 1999, Everett Sanders, III and Debtor divorced.

34. On June 8, 2003, Debtor recorded an Interspousal Transfer Grant Deed in the Contra Costa County Recorder's Office, (executed on June 3, 2002), The deed granted Debtor sole ownership of the property located at 601 Napa Avenue, Rodeo, CA, 94572, in exchange for valuable consideration.. (Hereinafter the "family home").

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 6 of 37

## F. Freddie Mac Ownership of the Loan

35. In 2003 and 2004, at Wells Fargo Home Mortgage, Inc's direction, the Debtor contacted the Federal Home Loan Mortgage Corporation, (FHLMC or Freddie Mac), at the direction of Wells Fargo Home Mortgage Inc. to resolve an accounting/billing issue. Debtor was informed, Freddie Mac was the investor on the mortgage loan. Freddie Mac assisted the Debtor in correcting the issue.

36. In 2007, the Debtor filed a Voluntary Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, Northern District of California, Oakland Division, under Case No. 07-43548-EDJ seeking the Court's protection.

37. During her first Chapter 13 Bankruptcy, Debtor challenged the standing of Wells Fargo Bank, NA, as both the owner of the Note and the servicer of the loan. Based on Detor's information and belief:

(1) Freddie Mac, was the owner of the Note, as previously verified.

(2) Wells Fargo Home Mortgage was merely the loan servicer, as shown on Debotr's billing statements.

(3) Contra Costa County, Recorder records, reflected The Prudential Home Mortgage Company Inc. as the original beneficiary on the Deed of Trust.

(4) The only recorded assignment of thr Deed of Trust, was from The Prudential Home Mortgage Company, Inc. to Norwest Mortgage, Inc., in 1996.

38. Despite Norwest Mortgage, Inc., changing its name to Wells Fargo Home Mortgage, Inc. in 2000, different attorneys appeared in the Debtor's first bankruptcy case representing:

1- Norwest Mortgage, Inc, claiming it was still the Creditor of the mortgage loan

2- Wells Fargo Home Mortgage, Inc; despite its 2004 merger into Wells Fargo Bank, NA. (This merger was unknown to the Debtor at the time.

39. In 2008, after filing a notice of default against the Debtor's property, Wells Fargo Bank, NA, assigned the Deed of Trust to itself, citing:

- The 1998 merger of Wells Fargo and Company and Norwest Bank.

- The 2000 name change of Norwest Mortgage, Inc to Wells. Fargo Home Mortgage, Inc.

- 7 -

FIRST AMENDED COMPLAINT

- The 2004 merger of Wells Fargo Home Mortgage, Inc. into Wells Fargo Bank, NA.

40. In 2009, Debtor verified Freddie Mac's ownership of the loan, by contacting them via email; Additonally, Wells Fargo Home Mortgage confirmed the same in writing.

41. In a November 14, 2009 letter, Wells Fargo informed Everett E Sanders, III:

*"Our records indicate the loan referenced above was originated on March 29, 1995".*

**42.** After Debtor provided Freddie Mac emails and Wells Fargo's written confirmation, Wells Fargo Bank, N.A. conceded that:

- **Freddie Mac was the owner of the loan.**

- **Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage was only the servicer.**

43. However, **Wells Fargo still insisted it was the Note Holder.**

G, **Well's Fargo's Admissions in Court Filings**

44. In 2009, Wells Fargo, stated in an Opposition to the Debtor's Objection to its Proof of Claim:

**"***The Note and Deed of Trust are collectively referred to herein as the "Subject Loan." ….subsequently the Lender indorsed the Note in Blank, thereby converting the Note to bearer instrument. Creditor is currently in rightfully possession of the indorsed in blank Note and Federal Home Loan Mortgage Corporation is the current owner of the Subject Loan.. …." x*

**45. Wells Fargo** argued that since the **Note was endorsed in blank, it could be enforced by whoever possessed it.** (See Cal. Com Code Sections 3201, 1201(21)(a)).

**46. Wells Fargo acknowledged** that its **Proof of Claim was mistakenly filed in the name of Wells Fargo Home Mortgage, Inc.**, and stated it would **amend its Proof of Claim to reflect Wells Fargo Bank, N.A. as the proper party.**

47. Wells Fargo further argued:

- **"A mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation that the mortgage secures."** (Restatement (Third) of Property (Mortgages) Section 5.4, citing Carpenter v. Logan).

- **California Civil Code Section 2936** states that **any transfer of the Note automatically transfers the Deed of Trust.**

- **Wells Fargo** claimed that regardless of the assignment's validity, it still had the right to enforce the Deed of Trust.

**48.** At **trial, Wells Fargo produced a Note allegedly endorsed in blank.**

**49.** The **Debtor's objection was overruled.**

**50.** The **court granted Wells Fargo leave to amend its Proof of Claim as servicing agent.**

**H. Issues with Trial and Discovery**

51. **The Court did not grant discovery** for this Trial.

52. **Debtor was unable to attend trial** due to **excusable** error.

**I. Verification of Freddie Mac's Continued Ownership**

53. **On January 9, 2015,** the Debtor once again verified Freddie Mac's ownership of the loan.– Appendix page

54. **On September 23, 2015,** the Debtor received a letter from Wells Fargo Bank. NA, stating, "We service your mortgage on behalf of your investor FREDDIE MAC."—Appendix page .

55. On, **November 25, 2015,** Debtor receive correspondence from **Wells Fargo** stating:

"We received an inquiry from Freddie Mac on your behalf and its currently being reviewed....

**J. Debtor's Chapter 13 Plan Confirmed**

56. On February 11, 2016, Plaintiff filed a Voluntary Petition for Individuals Filing Bankruptcy with the United States Bankruptcy Court, Northern District of California, Oakland Division (hereinafter "Court"), seeking protection under Chapter 13 of the Bankruptcy Code..

57. On June 13, 2016, Wells Fargo filed Proof of Claim 3-1 in the amount of $139,025.58 with arrears in the amount of $39,121.42.

58. . On July 8, 2016, Debtor's Chapter 13 Plan was confirmed by the Court.

**K. Incorrect Alleged Arrearage Payments**

59. On or about February 16, 2016 the Debtor received a monthly home loan statement ,( dated 02/16/2016), from:

Wells Fargo Home Mortgage, PO Box, 14411, Des Moines, IA 50306-3411,

– 9 –
FIRST AMENDED COMPLAINT

The statement demanded a payment of $39,413.35, which alleged to included:

- Unpaid payments in the amount of $37,013.87, (covering 07/01/2014 to -02/01/2016)

- Late charges in the amount of $462.91

- New monthly payment--due on 03/01/2016--in the amount of $1936.57

- The statement listed the following loan details:

  a) unpaid principal balance was listed as $111,253.98;

  b) unpaid advance balance of $996.27,

  c) Escrow balance of $-6,266.42;

  d) Fixed Interest Rate: 8.5%

  e) ; Maturity date: April 2025

**L. Debtor's Schedule D Filing and Mortgage Claim Dispute**

60. **On February 24, 2016,** Debtor filed Official Form 106 D - Schedule D: Creditors Who Have Claims Secured by Property, ("hereinafter Schedule D").

61. On Schedule D, Page 2 of 5, Debtor disputed a secured claim as follows:

62. Creditor: The Prudential Home Mortgage Co,  CT Corporation System, Inc.

63. Address: 100 South Fifth Street, Ste. 1075, Minneapolis, MN 55402.

64. Debt Amount: **$148,540.00,** (which included $37.476.78 in alleged arrears/charges)

65. Date Debt Incurred: **March 29, 1995**

66. **Property Securing the Claim:**

- Family Home- 601 Napa Street, Rodeo, CA 94572

- APN:-XXX-XXX-024-2

  See Courtesy Snapshot of Schedule D, (below):

**Additional Page**

Part 1: After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion If any |
|---|---|---|---|
| 2.3 The Prudential Home Mortg Co | $ 148,540.00 | $ 409,490.00 | $ |

Creditor's Name

CT Corporation System, Inc.
Number   Street

100 South Fifth Street, Ste 1075

Minneapolis,   Mn   55402
City    State   ZIP Code

Describe the property that secures the claim:

Family Home-601 Napa Street, Rodeo, CA 94572 –APN- xxx-xxx-024-2

As of the date you file, the claim is: Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

Who owes the debt? Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred 03/29/1995

Nature of lien. Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset) right to offset

Last 4 digits of account number 8 5 4 5

## M. Wells Fargo Proof of Claim

67. On June 13, 2016, Wells Fargo Bank, NA filed Proof of Claim 3-1

- Total amount claimed: $135,025.58
- Alleged Arrears claimed: $39,121.42

68. On December 7, 2018, Wells Fargo Bank, N.A. amended Proof of Claim 3-1, filing Proof of Claim 3-2

- Total amount claimed: $134,996.37
- Total arrears claimed: $39,092.21

69. On January 22, 2020, Specialized Loan Servicing, LLC, filed an Amended Proof of Claim 3-3, which:

- Omitted any mortgage payment history details.
- Debtor requests that the Court take judicial notice of :
  - Proof of Claim 3-1, (filed June 13, 2016)
  - Proof of Claim 3-2, (filed December 7, 2018)
  - Proof of Claim 3-3, (filed January 22, 2020)

## N. Debtor's Chapter 13 Plan Addressing Alleged Arrears

- **Alleged Unpaid Payments According to Wells Fargo Home Mortgage Statements:**

| Payment Date | Total Payment | Interest (I) | Principal (P) | Escrow (E) |
|---|---|---|---|---|
| 07-01-2014 | $1,792.36 | $788.05 | $534.49 | $469.82 |
| 08-01-2014 | $1,792.36 | $784.26 | $538.28 | $469.82 |
| 09-01-2014 | $1,792.36 | $780.45 | $542.09 | $469.82 |
| 10-01-2014 | $1,792.36 | $776.61 | $545.93 | $469.82 |
| 11-01-2014 | $1,792.36 | $772.74 | $549.80 | $469.82 |
| 12-01-2014 | $1,792.36 | $768.85 | $553.69 | $469.82 |
| 01-01-2015 | $1,792.36 | $764.93 | $557.61 | $469.82 |
| 02-01-2015 | $1,792.36 | $760.98 | $561.56 | $469.82 |
| 03-01-2015 | $1,792.36 | $757.00 | $565.54 | $469.82 |
| 04-01-2015 | $1,792.36 | $752.99 | $569.55 | $469.82 |
| 05-01-2015 | $1,792.36 | $748.96 | $573.58 | $469.82 |
| 06-01-2015 | $1,921.99 | $744.90 | $577.64 | $599.45 |
| 07-01-2015 | $1,921.99 | $740.80 | $581.74 | $599.45 |
| 08-01-2015 | $1,921.99 | $736.68 | $585.86 | $599.45 |
| 09-01-2015 | $1,921.99 | $732.53 | $590.01 | $599.45 |
| 10-01-2015 | $1,921.99 | $728.36 | $594.18 | $599.45 |
| 11-01-2015 | $1,921.99 | $724.15 | $598.39 | $599.45 |
| 12-01-2015 | $1,921.99 | $719.91 | $602.63 | $599.45 |
| 01-01-2016 | $1,921.99 | $715.64 | $606.90 | $599.45 |
| 02-01-2016 | $1,921.99 | $711.34 | $611.20 | $599.45 |

68. **Total alleged arrears:**

- **(11 months × $1,792.36) + (9 months × $1,921.99) = $37,013.87**

**O. Courtesy Snapshot of Debtors Chapter 13 Plan-Secured Claims**

69. As part of her Chapter 13 Plan, the Debtor included a structured repayment plan to cure alleged arrears on her mortgage.

**Class 1- Secured Claims (Arrears Repayment Plan)**

| Creditor Name / Collateral Description | Amount of Arrears | Fixed Arrearage Payment Schedule | Payment Start Date |
|---|---|---|---|
| **Original Creditor**: The Prudential Home Mortgage Company, Inc. – Minneapolis, MN | $37,476.78 | | |
| **Loan Servicer**: Wells Fargo Bank, NA dba Wells Fargo Home Mortgage | | | |
| **Collateral Description**: Family Home – 601 Napa Street, Rodeo, CA 94572 | | | |
| **Assessor's Parcel No.**: XXX-XXX-024-2 | | | |
| **Payment Plan Breakdown**: | | | |
| | | - $75.00 | March 2016 |
| | | - $361.00 | June 2016 |
| | | - $539.00 | November 2016 |
| | | - $880.00 | March 2017 |
| | | - $305.00 | September 2020 |
| | | - $80.00 | October 2020 |

P.   Chapter 13 Plan Treatment of Secured Claims

70. **Section 2.04 - Class 1: All Delinquent Secured Claims Not Modified by the Plan**

- Class 1 claims include **secured mortgage claims that are delinquent but not modified** by the Chapter 13 Plan.
- Debtor or a **third party** (if applicable) shall **directly make all post-petition payments** on Class 1 claims.

71. **Cure of Arrears**

- The **Chapter 13 Trustee** shall pay in **full all allowed pre-petition arrears** on Class 1 claims.

72. **Application of Payments**

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 13 of 37

- The arrearage **payment may include interest**. If no interest rate is specified, **interest will not accrue.**
- **Arrearage payments must be applied to arrears.**
- If the plan provides for **interest on arrears**, the **arrearage payment shall be applied first to such interest, then to arrears.**

73. **Plan Confirmation Details**

- **Plan Filed Date:** June 16, 2016
- **Plan Entered into Court Record:** June 17, 2016

*(See Exhibit F—Debtor's Chapter 13 Plan, Secured Claims Breakdown.)*

Q. Confirmation of Debtor's Chapter 13 Plan and Accounting Errors in Proof of Claim

    1.   Confirmation of Chapter 13 Plan

70. On **July 8, 2016**, the Debtor's **Fifth Amended Chapter 13 Plan**, which was **filed on June 16, 2016**, was **confirmed** by the Court".

    2.   Accounting Errors in Proof of Claim No. 3-2

**71.** Discrepancies in Contractual Payments as Detailed in Amended Proof of Claim No. 3-2, Filed by Wells Fargo Bank, N.A.:

- In the Mortgage Proof of Claim attached to Proof of Claim No. 3-2, specifically Part 5 - Loan History, the recorded contractual payments deviate from the amounts listed in the mortgage statements issued by Wells Fargo Bank, N.A. to the Debtor.

72. The **following discrepancies exist between contractual payments** listed in Proof of Claim No. 3-2 and the **actual mortgage statements** provided to the Debtor:

| Date | Proof of Claim 3-2 (Contractual Payment) | Mortgage Statement (Requested Payment) |
|---|---|---|
| 08-01-2014 | $1,885.88 | $1,792.36 |
| 09-01-2014 | $1,885.88 | $1,792.36 |

– 14 –
FIRST AMENDED COMPLAINT

| Date | Proof of Claim 3-2 (Contractual Payment) | Mortgage Statement (Requested Payment) |
|---|---|---|
| 06-01-2015 | $1,849.36 | $1,921.99 |
| 07-01-2015 | $1,849.36 | $1,921.99 |
| 08-01-2015 | $1,849.36 | $1,921.99 |
| 09-01-2015 | $1,849.36 | $1,921.99 |
| 10-01-2015 | $1,849.36 | $1,921.99 |
| 11-01-2015 | $1,849.36 | $1,921.99 |
| 12-01-2015 | $1,849.36 | $1,921.99 |
| 01-01-2016 | $1,849.36 | $1,921.99 |
| 02-01-2016 | $1,849.36 | $1,921.99 |

*(See Exhibit B - Mortgage Statements and Exhibit J - Proof of Claim 3-2, Mortgage Proof of Claim Attachment.)*3. Additional Accounting Discrepancies

3. Additional Accounting Discrepanicies

73. Incorrect Arrearage Calculations

• The Debtor contests the claim that the first unpaid arrears payment was from July 1, 2014, in the amount of $1,792.36 (Interest: $788.05, Principal: $534.49, Escrow: $469.82).

• The Debtor maintains that this payment was made before the bankruptcy petition was filed.

**74.** Further Accounting Issues

• Additional accounting errors and discrepancies are addressed in the detailed accounting history generated by the Debtor, as ordered by the Court, and are incorporated herein by reference.

R. Debtor's Objections to Proof of Claims and Motion to Enforce Order for Accounting

**1. Transfer of Proof of Claim and Initial Objection**

75. On February 25, 2019, Wells Fargo Bank, N.A. transferred Proof of Claim 3-2 to Specialized Loan Servicing, LLC.

- Debtor **requests the Court take judicial notice** of **Docket No. 65** (Transfer of Claim No. 3), which states:
  - o **Transferor**: Wells Fargo Bank, N.A. (Claim No. 3)
  - o **Transferee**: Specialized Loan Servicing, LLC
  - o **Fee Amount**: $25
  - o **Filed by**: Creditor Specialized Loan Servicing, LLC. (Suri, Mukta)

*(See Exhibit __ - Transfer of Claim No. 3.)*

**76. Legal Note – Plain Error: Wells Fargo Bank, N.A. did not assign the promissory note to Specialized Loan Servicing, LLC in the Assignment of Deed of Trust. Only the Deed of Trust was assigned, not the Note, which is a material issue.**

77. On May 28, 2019, the Debtor filed an Objection to Claim No. 3-2, citing improper documentation and accounting errors.

- Debtor **requests the Court take judicial notice** of **Docket Nos. 91 and 92**:
  - o **Objection to Claim No. 3** (filed by Debtor Angela Eleanor Sanders)
  - o **Notice of Hearing** on Objection to Claim No. 3
  - o Supporting Exhibits (A through H)

*(See Exhibit __ - Objection to Proof of Claim No. 3.)*

**2. Court's Ruling on Debtor's Objection to Claim No. 3**

78. On November 6, 2019, a hearing was held regarding the Debtor's Objection to Claim No. 3.

79. The Court ruled as follows:

- **The Objection was sustained in part and overruled in part without prejudice.**
- **Specialized Loan Servicing, LLC was ordered to provide a detailed accounting of the family-home loan account to the Debtor.**
- Debtor **requests the Court take judicial notice** of:
  - o **Docket entry for 11/6/2019:**
    - ▪ *"Courtroom Hearing held before Judge Roger L. Efremsky on 11/06/2019 at 1:30 PM regarding 91 Debtor's Objection to*

– 16 –
FIRST AMENDED COMPLAINT

*Claim #3. The objection is sustained in part and overruled in part without prejudice. Creditor shall provide a detailed accounting. Appearances: Brian Thomley and Debtor present."*

- o **Docket No. 122**: PDF with attached **audio file** of hearing (File size: 3064 KB, Run time: 00:06:23).

### 3. Specialized Loan Servicing Fails to Provide Complete Accounting

80. On December 11, 2019, Specialized Loan Servicing, LLC filed an incomplete Accounting and Loan History and promised to provide the missing years.

- Debtor **requests the Court take judicial notice** of **Docket No. 131**, dated **December 11, 2019**:
  - o **Accounting and Loan History filed by Specialized Loan Servicing, LLC.**

81. On December 18, 2019, the Debtor filed a second Objection to Claim No. 3-3, arguing that:

- The **accounting issues were not resolved**.
- The **Creditor did not complete the Mortgage Proof of Claim Attachment**.
- The **Loan History was missing key data**.
- Debtor **requests the Court take judicial notice** of **Docket Nos. 133, 134, and 135**, which include:
  - o **Objection to Claim No. 3-3** (filed by Debtor Angela Eleanor Sanders).
  - o **Declaration in support of Objection**.
  - o **Notice of Objection to Claim No. 3-3**.

*(See Exhibit ___ - Objection to Amended Claim No. 3-3.)*

### 4. Transfer of Claim to U.S. Bank Trust, N.A. and Continued Failure to Provide Accounting

82. On February 11, 2021, Specialized Loan Servicing, LLC transferred Claim 3-3 to U.S. Bank Trust, N.A., not in its individual capacity but solely as Owner Trustee for VRMTG Asset Trust.

- **Notices were sent to Fay Servicing, LLC, as the new loan servicer**.
- Debtor **requests the Court take judicial notice** of **Docket No. 198**, Transfer of Claim No. 3-3, which states:
  - o **Transferor**: Specialized Loan Servicing, LLC.
  - o **Transferee**: U.S. Bank Trust, N.A. (Owner Trustee for VRMTG Asset Trust).
  - o **Fee Amount**: $26
  - o **Filed by**: Creditor U.S. Bank Trust, N.A.

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 17 of 37

*(See Exhibit ___ - Transfer of Claim No. 3-3 to U.S. Bank Trust, N.A.)*

83. Despite this transfer, neither Fay Servicing, LLC nor U.S. Bank Trust, N.A. provided the required detailed accounting.

**5. Motion to Enforce Court Order for Accounting**

84. On December 22, 2022, the Debtor filed a Motion to Enforce the Court's November 6, 2019 Order requiring the production of a detailed accounting history for the loan.

- Debtor **requests the Court take judicial notice** of Docket No. 230, which includes:
  - o **Motion to Enforce Order** filed against **U.S. Bank Trust, N.A. and Fay Servicing, LLC**.
  - o **Supporting Declaration of Debtor**.

85. On January 18, 2023, at a continued hearing, the Court again ordered:

- *"U.S. Bank must file an accounting and a status conference statement seven (7) days prior to the continued hearing on 02/24/2023."*

86. Neither U.S. Bank Trust, N.A. nor Fay Servicing, LLC complied with the Court's order to provide the detailed accounting.

87. On April 21, 2023, the Court again ordered:

- *"By April 28, 2023, Debtor shall file and serve a full accounting regarding her Objection to Claim filed by Wells Fargo Home Mortgage."*
- **Debtor requests the Court take judicial notice of Docket Item from April 21, 2023**, where the Court continued hearings on **Docket No. 230 (Motion to Enforce Order) and Docket No. 234 (Motion for Determination of Final Cure Amount).**

88. On May 1, 2023, in compliance with the Court's order, Debtor filed a full accounting; however, the Debtor did not finish the accounting and her accounting did not agree with the servicers' accounting.

- Debtor **requests the Court take judicial notice** of Docket No. 306, which includes:
  - o **Amended Motion for Determination of Final Cure Payment**.
  - o **Debtor's Supplemental Declaration**.
  - o **Family Home Loan Detailed Accounting History**.

– 18 –
FIRST AMENDED COMPLAINT

*(See Exhibit __ - Debtor's Full Loan Accounting.)*

**S. Mis-Crediting of Funds and Improper Accounting in Chapter 13 Bankruptcy**

1. Overview of Curing Mortgage Arrears in Chapter 13 Bankruptcy

89. Chapter 13 bankruptcy provides a legal framework to cure mortgage arrears over time, ensuring debtors can retain their homes while systematically addressing overdue payments. Under 11 U.S.C. § 1322(b)(5), a debtor may:

- **Cure a default** on long-term debts over a reasonable period, while

90. Simultaneously maintaining ongoing mortgage payments as if no default had occurred.

91. Automatic Stay Protections (11 U.S.C. § 362(a)):

- The filing of a Chapter 13 petition **immediately halts collection actions**, including mortgage late fees and foreclosure.
- Creditors **must not** treat the loan as in default for post-petition payments.
- The mortgage should be **treated as current** during the bankruptcy case, **separate from the pre-petition arrears.**

92. Dual Account System for Mortgage Payments:

- Mortgage servicers should maintain **two separate accounts** for the loan:

    1. **Pre-Petition Arrears Account** – tracks arrears paid through the **Chapter 13 Trustee**.
    2. **Post-Petition Account** – tracks **current monthly mortgage payments** made directly by the debtor.

93. Improper Loan Servicing in This Case:

- **Wells Fargo Bank, N.A. (Wells Fargo)** failed to correctly maintain a **dual-account structure.**

– 19 –
FIRST AMENDED COMPLAINT

- **Post-petition payments were misapplied to pre-petition arrears**, causing accounting errors and increasing alleged defaults.
- The improper accounting continued under **Fay Servicing, LLC**, which failed to correct these errors after acquiring the loan.

## 2. Wells Fargo's Initial Mis-Crediting of Payments

94. On January 19, 2016, Wells Fargo issued a Mortgage Statement demanding a payment of $1,921.99 due on February 1, 2016.

95. On February 11, 2016, the Debtor filed for Chapter 13 bankruptcy protection.

96. On February 15, 2016, Wells Fargo conducted an Escrow Analysis and revised the payment due on March 1, 2016, to $1,196.57.

97. On February 25, 2016, a second Escrow Analysis was conducted, increasing the payment to $1,885.88, which was itemized as follows:

- Regular Fixed-Rate Payment: **$1,322.54**
- Escrow Payment: **$563.34**

98. On or around March 1, 2016, the Debtor submitted a payment of $1,921.99 (Check No. 5003).

99. On March 7, 2016, Wells Fargo issued a mortgage statement, applying this payment as follows:

- Funds received: **$129.63 (held in suspense)**
- Payment breakdown:
  - o Interest: **$788.05**
  - o Principal: **$534.49**
  - o Escrow: **$469.82**

104. **Critical Error:**

- Instead of treating **March 1, 2016, as the first post-petition payment**, Wells Fargo **misapplied it to the alleged pre-petition arrears from July 1, 2014**.
- This error **falsely increased the outstanding post-petition balance**, placing the Debtor at risk of default.

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 20 of 37

### 3. Ongoing Misapplication of Payments and Accruing Errors

105.     **On April 1, 2016**, the **Debtor submitted a second post-petition payment**.

- This payment **should have been credited as the April 2016 post-petition mortgage payment**.
- Instead, **Wells Fargo misapplied it to the alleged August 1, 2014, arrears**.

106.     **Wells Fargo's Account Handling:**

- Incorrectly allocated escrow funds.
- Incorrectly applied principal and interest to the pre-petition balance instead of treating the loan as current.
- Improperly placed an overage of $36.11 into a suspense account rather than reducing the principal balance.

107.     **Impact of Mis-Crediting on Bankruptcy Compliance:**

- **Under Chapter 13 bankruptcy rules, the Trustee pays the pre-petition arrears.**
- **The debtor is only responsible for post-petition payments directly to the servicer.**
- Wells Fargo's misapplication of funds violated **bankruptcy accounting principles** by:
  1. **Treating the loan as delinquent instead of current.**
  2. **Applying post-petition funds to pre-petition arrears, creating an inaccurate payment history.**
  3. **Falsely reflecting a higher arrears balance than actually existed.**

108.     **Evidence of Inconsistent Servicing Practices:**

- **Statements from Wells Fargo show contradictory information** about unpaid dues.
- After the **April 1, 2016, payment**, Wells Fargo's records claimed unpaid balances dating **from 9/1/14 to 4/1/16**, despite bankruptcy protection.

### 4. Failure of Fay Servicing, LLC to Correct Accounting Errors

109.     **On February 11, 2021, Specialized Loan Servicing, LLC transferred the servicing rights** to **Fay Servicing, LLC**, while the loan was held by **U.S. Bank Trust, N.A. (as Trustee for VRMTG Asset Trust)**.

110.     **Fay Servicing Failed to Correct Past Errors:**

- Despite taking over servicing, **Fay Servicing continued to rely on Wells Fargo's flawed accounting**.
- Fay Servicing **did not investigate or rectify prior misapplications of funds**.
- The Debtor **repeatedly contacted Fay Servicing requesting corrections**, which were ignored.

**5. Legal Consequences of Payment Misapplications**

111.　　　**The misapplication of payments constitutes multiple violations, including:**

- **Bankruptcy Code Violations**
  - **11 U.S.C. § 1322(b)(5)** (cure and maintain provision)
  - **11 U.S.C. § 362(a)** (automatic stay protection)
- **Failure to properly account for funds under RESPA (12 U.S.C. § 2605)**
- **Breach of contract and wrongful foreclosure risk** due to incorrect accounting.

112.　　　**Debtor's Demand for Corrective Accounting:**

- **A complete and accurate loan history must be provided**, reconciling misapplied funds.
- **All post-petition payments should be credited correctly** to reflect a **current loan status** as required under bankruptcy law.

T. Additional Servicing Violations and Fraudulent Practices

1.　　　Servicer's Failure to Maintain Proper Loan Records

114.　　　**Fay Servicing, LLC failed to maintain accurate loan records upon acquiring the loan from Specialized Loan Servicing, LLC (SLS).**

- When the loan was transferred, **Fay Servicing falsely stated there was no COVID-19 Forbearance in effect** for the loan.
- Later, **Fay Servicing submitted a forbearance agreement with backdated dates**, which did not match the forbearance terms previously granted to the Debtor.
- **These discrepancies indicate that neither servicer maintained an accurate loan file**, violating standard servicing practices and Freddie Mac guidelines.

2.    Improper Fees Charged Without Approval

115.    Throughout the **Debtor's Chapter 13 plan period**, both **SLS and Fay Servicing** improperly:

- Charged **unauthorized attorney fees and other expenses** to the loan balance.
- **Failed to disclose these fees to the Court,** violating **Federal Rule of Bankruptcy Procedure 3002.1(c).**
- Omitted these fees from **Fay Servicing's Response to the Notice of Final Cure Payment,** even though they had already been charged to the loan.
- **Assessed fees during the Debtor's COVID-19 Forbearance Period,** despite knowing that mortgage payments were suspended under the CARES Act.

116.    **These actions breached the terms of the Debtor's Chapter 13 Plan and constitute servicing fraud.**

3.    Swapped Promissory Notes and Endorsement Irregularities

117.    **During the case, SLS filed two different versions of the promissory note.**

- The **first version was endorsed by Georgianna Sieleni,** VP of Loan Documentation for Wells Fargo Bank, N.A.
- Later, **this note was swapped out and replaced** with a version that was endorsed in blank.

118.    **Further evidence of fraud:**

- The **signature of Everett E. Sanders on the promissory note is inconsistent.**
- Everett Sanders **always signs documents as "Everett E. Sanders, III"** but the promissory note **only states "Everett Sanders" without the "III."**
- This raises **serious questions regarding the authenticity of the endorsement** and whether the note has been altered.

4.    Failure to Follow Freddie Mac Guidelines and Accounting Discrepancies

119.    **None of the servicers followed Freddie Mac's servicing guidelines while managing the loan.**

- Fay Servicing provided **inconsistent explanations** for why the **California Mortgage Relief Fund (HAF) payment was returned.**
- Fay Servicing's stated reasons included:
  - An **escrow shortage**

– 23 –

FIRST AMENDED COMPLAINT

o The **Debtor's bankruptcy**
o **A system glitch**

- **The Bankruptcy Appellate Panel (BAP) concluded that Fay Servicing itself did not know why it returned the HAF funds.**

**120.** Fay Servicing's failure to provide the Debtor with a Freddie Mac exit strategy at the conclusion of the COVID-19 Forbearance—**in violation of CARES Act protections—is currently on appeal before the Ninth Circuit.**

**121.** Since the court granted summary judgment in favor of Fay Servicing, the servicer has stopped sending monthly loan statements **to the Debtor, further obstructing her ability to manage her mortgage.**

**122.** Freddie Mac has now informed the Debtor that there is only one person on the loan, further contradicting prior loan records.

5. Statement Regarding Bankruptcy Court's Authority to Issue a Final Ruling

123. **Debtor consents to the Bankruptcy Court entering a final decision in this matter.**

100. Plaintiff made payments under her Chapter 13 Plan, which were improperly miscredited by Defendants and **Fay Servicing, LLC** and its successors and assignees.

101. During the course of her bankruptcy case, Plaintiff discovered that Defendants had produced two conflicting versions of the promissory note purportedly governing her mortgage loan, raising questions about the validity of the loan and lien on her property.

102. Despite Plaintiff's attempts to resolve these discrepancies, Defendants have failed to correct their accounting errors or provide a clear explanation of the promissory note discrepancies.

103. Defendants' actions have caused Plaintiff financial harm, confusion, and difficulty in completing her Chapter 13 Plan

104.     Defendants failed to establish a "dual account system" to properly separate pre- and post-petition payments. Plaintiff's post-petition payments were miscredited toward pre-petition arrears, resulting in inaccurate balances and financial harm. Defendants also mishandled escrow payments, causing inflated demands and payment discrepancies.

## IV. .CLAIMS FOR RELIEF

**Count 1: Declaratory Relief (28 U.S.C. § 2201)**

105.     . Plaintiff seeks a declaratory judgment determining:

**Count 2: Injunctive Relief**

106.     Plaintiff seeks an injunction compelling Defendants to correct payment records and refrain from further miscrediting payments

    o    The validity of the lien and promissory note;

    o    The proper application of payments made under the Chapter 13 Plan.

**Count 3: Breach of Chapter 13 Plan**

107.     Defendants violated the confirmed Chapter 13 Plan by failing to accurately account for payments.

**Count 4: Determination of Validity of Loan and Security**

108.     Plaintiff requests that the Court determine which promissory note governs the loan and the validity of the lien on the Subject Property.

## V.  Miscrediting of Funds

### A. Post-Petition Payment Misapplication

109.     Plaintiff made timely post-petition mortgage payments as required under her confirmed Chapter 13 Plan.

110.     Defendants, including Wells Fargo Bank, NA, misapplied Plaintiff's post-petition

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 25 of 37

payments by improperly crediting them toward pre-petition arrears instead of treating the loan as current under 11 U.S.C. § 1322(b)(5).

111.    Defendants failed to establish and maintain a "dual account system," which is necessary to properly account for pre-petition arrears separately from ongoing post-petition payments.

112.    As a result, Plaintiff's payments were incorrectly classified as late or unpaid, creating inaccurate arrearage balances and causing financial and emotional distress.

### B. Escrow and Suspense Account Errors

113.    Defendants further compounded the inaccuracies by improperly handling Plaintiff's escrow payments and suspense account balances.

114.    For example, Wells Fargo Bank, NA:

115.    Failed to apply overages from Plaintiff's payments toward principal balances.

116.    Misclassified payments, leading to inaccurate escrow analyses and inflated monthly payment demands.

117.    These errors continued after servicing transferred to Fay Servicing, LLC, which failed to correct the misapplications or address the discrepancies.

### C. Impact of Miscrediting

118.    The misapplication of Plaintiff's payments caused significant harm, including:

- o   Incorrect arrearage balances, which jeopardized Plaintiff's ability to cure pre-petition defaults.

- o   Erroneous escrow analyses resulting in fluctuating monthly payment demands.

- o   Emotional and financial distress caused by ongoing inaccuracies in loan servicing.

119.    Plaintiff has attached true and correct copies of key statements, escrow analyses, and payment records as **Exhibit A** to support these allegations.

**COUNT 5: VIOLATION OF DISCHARGE INJUNCTION UNDER 11 U.S.C. § 524(a)(2)**

(For an Adversary Proceeding Under **FRBP 7001(6)** and **Motion for Contempt Under § 105**)

A.   The Effect of Discharge on Plaintiff's Mortgage Obligations

120.   Under **11 U.S.C. § 524(a)(2)**, a Chapter 13 discharge:

*"Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor."*

120.   Plaintiff received a discharge on July 13, 2023, pursuant to 11 U.S.C. § 1328(a).

121.   As part of Plaintiff's confirmed Chapter 13 Plan, all pre-petition arrears were cured through Trustee payments, and post-petition payments were required to be applied only in accordance with the CARES Act, Freddie Mac guidelines, and the plan's provisions.

122.   At the time of discharge, Plaintiff was entitled to have her mortgage account properly updated to reflect the correct post-petition and forborne balances.

123.   Despite Plaintiff's discharge, Defendants engaged in collection activities in violation of § 524(a) by: a. Attempting to collect alleged pre-petition and post-petition balances that were already resolved through the confirmed plan.

b. Assessing and attempting to collect fees, charges, and escrow overages that were neither disclosed in the proofs of claim nor included in the Response to the Notice of Final Cure.

c. Failing to properly apply Homeowner Assistance Funds (HAF) payments, which should have satisfied outstanding obligations.

d. Continuing to treat the account as delinquent, despite Plaintiff successfully completing the Chapter 13 Plan and obtaining a discharge.

e. Refusing to provide monthly statements reflecting accurate balances after the discharge, in furtherance of improper collection efforts.

B.   Defendants' Knowledge and Willful Violation

124.   **Defendants had actual knowledge** of the Plaintiff's bankruptcy discharge because:

- Each servicer was **served with the Notice of Discharge** on or around July 13, 2023.

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 27 of 37

- Defendants actively participated in the bankruptcy proceedings, including filing **Proof of Claim 3-1, 3-2, and 3-3**, responding to the **Notice of Final Cure**, and attending hearings regarding loan accounting.
- Plaintiff repeatedly **notified Defendants in writing** (through Qualified Written Requests and regulatory complaints) that their collection activities were improper.

125.     Despite **actual knowledge** of the discharge, Defendants **continued their unlawful conduct** by:

- Sending collection notices **after discharge** demanding payments that were already satisfied.
- Failing to correct the misapplication of Plaintiff's post-petition payments and escrow accounts.
- Continuing to misreport Plaintiff's mortgage status to third parties, creating the false appearance of default.

126.     These **willful violations of the discharge injunction** caused Plaintiff substantial harm, including **financial damage, emotional distress, and reputational harm.**

C.     Legal Basis for Contempt and Sanctions Under 11 U.S.C. § 105(a)

127.     Under 11 U.S.C. § 105(a), bankruptcy courts have broad equitable **powers** to enforce the discharge injunction and impose **sanctions for willful violations.**

To establish a **discharge violation**, Plaintiff must show:

**A valid discharge order exists (which it does).**

**Defendants had knowledge of the discharge (which they did).**

**Defendants engaged in conduct that violated the discharge injunction (which they did by attempting to collect discharged amounts).**

**Defendants acted willfully (because they continued collection attempts despite Plaintiff's repeated objections and regulatory complaints).**

The Ninth Circuit has held that a discharge violation **does not require bad faith**—it is enough that the creditor intended the act that violated the injunction (**Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996 (9th Cir. 2006)**).

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 28 of 37

# ADDITIONAL COUNTS FOR VIOLATION OF DISCHARGE

## COUNT 6: VIOLATION OF FRBP 3002.1(c) - FAILURE TO DISCLOSE FEES DURING BANKRUPTCY

131.     Federal Rule of Bankruptcy Procedure **3002.1(c)** requires mortgage creditors to disclose all fees, expenses, and other charges during the bankruptcy case.

132.     Defendants violated this rule by:

- **Assessing unauthorized fees and attorney costs without court approval.**
- **Failing to disclose these fees in the Response to the Notice of Final Cure.**
- **Charging fees and expenses even during Plaintiff's COVID-19 Forbearance Period.**

133.     Because Defendants failed to comply with **Rule 3002.1(c),** they should be barred from collecting these charges.

134.     Plaintiff requests the Court **order Defendants to remove all undisclosed fees** and impose **sanctions** for their failure to comply with FRBP 3002.1.

## COUNT 7: FRAUDULENT SERVICING AND MISAPPLICATION OF FUNDS

135.     As part of their servicing violations, Defendants engaged in **fraudulent practices** by:

- **Submitting conflicting versions of the promissory note** (one endorsed in blank, one specially endorsed).
- **Misapplying payments** to pre-petition arrears instead of properly accounting for them as post-petition payments.
- **Providing false reasons for rejecting the HAF funds, including "escrow shortages" and "system glitches",** none of which were true.

136.     These actions constitute **fraud and deceptive servicing practices**, in violation of the Bankruptcy Code, **RESPA (12 U.S.C. § 2605),** and applicable consumer protection laws.

137.     Plaintiff requests the Court:

Case: 25-04001    Doc# 14    Filed: 03/05/25    Entered: 03/05/25 14:19:08    Page 29 of 37

- **Order a full forensic audit** of the loan account.
- **Declare that Defendants' servicing violations bar further enforcement of claimed amounts.**
- **Award compensatory and punitive damages** for Defendants' fraudulent conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A declaratory judgment regarding the validity of the lien and promissory note;

2. An injunction compelling Defendants to correct accounting errors;

3. Damages resulting from Defendants' breach of the Chapter 13 Plan;

4. Costs as permitted by law;

5. Injunctive relief requiring Defendants to correct payment records and properly account for pre- and post-petition payments;

6. Damages caused by the ongoing servicing errors.;

7. Any other relief the Court deems just and proper.

DATED: March 5, 2025

**Angela Eleanor Sanders**

**Plaintiff, Pro Se**

# FIXED RATE NOTE

MARCH 27, 1995      RICHMOND      CALIFORNIA
Date           City             State

601 NAPA AVENUE, RODEO, CA   94572
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 172,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
THE PRUDENTIAL HOME MORTGAGE COMPANY, INC.   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on MAY 1, 1995 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on APRIL 1, 2025 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at THE PRUDENTIAL HOME MORTGAGE COMPANY, INC. P.O. BOX 4148, FREDERICK, MD 21701-0909 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,322.54.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of $ 5.00 or 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorney's fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) herein or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note. Some of those conditions are described as follows:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Everett E. Sanders_ _____ (Seal)
EVERETT E. SANDERS               -Borrower

_Angela E. Sanders by Everett E.S...._ (Seal)
ANGELA E. SANDERS _per atty in fact_  -Borrower
                                 (Sign Original Only)

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _Georgian M Sielen_

GEORGIANA M SIELEN
VICE PRESIDENT LOAN DOCUMENTATION

Pay To The Order Of
Without Recourse

WELLS FARGO BANK, N.A.

The Prudential Home Mortgage Company, Inc.

_Heather Farris_, Assistant Secretary



Document Prepared by:
DOCK ASSIGNMENT SERVICES
When Recorded Mail to:

DOCK
1 S. LIMESTONE ST., SUITE 350
SPRINGFIELD, OHIO 45502
ATTN: POST PRODUCTION
Project #: 1996-44
Assignor No.: 3568545
Assignee No.:
Investor No.:
Pool No.: 0030270
Property Address:
601 NAPA AVENUE
RODEO                    CA    94572
PIN/Tax ID #

EC:
Legal
Film#
Batch#1
FHLMC
        4387

JUL 2 9 1996

96 140542

RECORDED AT REQUEST OF
**GRANTOR**

JUL 2 9 1996

AT 9 O'CLOCK A M.
CONTRA COSTA COUNTY RECORDS
STEPHEN L. WEIR
COUNTY RECORDER
FEE: $9.00 pd REF

*3568545*

*This space for Recorder's Use Only*

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged,
The Prudential Home Mortgage Company, Inc., D/B/A PHMC, Inc. and P.H. Mortgage Company, Inc., A New Jersey
Corporation
whose address is: 5325 Spectrum Drive, Frederick, MD 21701
by these presents does convey, grant, bargain, sell, assign, transfer and set over to
Norwest Mortgage, Inc., A California Corporation
whose address is: 405 SW 5th Street, Des Moines, IA 50328
the described Deed of Trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to
become due thereon.
Said Deed of Trust is recorded in the State of   CALIFORNIA    ,   CONTRA COSTA    County,
Official records on   03/31/95              as Document No.:   95-050811
in Book :                           at Page:                              as Certificate #:
Original Loan Amount is        $          172000.00   Loan Date: 03/27/95
Original Trustor:    EVERETT E. SANDERS AND ANGELA E. SANDERS, HUSBAND AND WIFE

Original Beneficiary:    The Prudential Home Mortgage Company, Inc.

Original Trustee:    FIDELITY NATIONAL TITLE INSURANCE COMPANYQ
IN WITNESS WHEREOF, the undersigned corporation by its Board of Directors has caused this instrument to be
executed by its duly authorized officers.
Dated this 05/16/96

The Prudential Home Mortgage Company, Inc., D/B/A
PHMC, Inc. and P.H. Mortgage Company, Inc., A New
Jersey Corporation

SEAL
1978
THE PRUDENTIAL HOME MORTGAGE CO., INC. NEW JERSEY

_____
Beverly Bigelow
Vice President

State of   Ohio
County of   Clark

On 05/16/96    before me,   Mina R. Raulston                , the undersigned, personally appeared
Beverly Bigelow                                            Vice President
of The Prudential Home Mortgage Company, Inc., D/B/A PHMC, Inc. and P.H. Mortgage Company,
Inc., A New Jersey Corporation
the Vice President                    address being 5325 Spectrum Drive, Frederick, MD 21701
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that (s)he executed the same in his/her authorized
capacity and that by his/her signature on the instrument, the entity upon behalf of which the
person acted, executed the instrument.
WITNESS my hand and seal.

_____
Notary Public, State of Ohio
Mina R. Raulston
My commission expires: 08/26/96

NOTARIAL SEAL
STATE OF OHIO

Exhibit B

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.  *Wachovia*
1000 BLUE GENTIAN RD
SUITE 200
EAGAN, MN 55121

AND WHEN RECORDED MAIL TO
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200

EAGAN, MN 55121-4400
ATTN: ASSIGNMENT TEAM

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC 2019-0019129-00
           -Wells Fargo Bank Minn MN
Tuesday, FEB 12, 2019 13:34:58
SB2    $75.00|MOD    $1.00|REC    $11.00
FTC     $0.00|DAF    $2.70|REF     $0.30
RED     $1.00|ERD    $1.00|
Ttl Pd    $92.00          Nbr

---

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, WELLS FARGO BANK, N.A. , 1 HOME CAMPUS , DES MOINES, IA 50328 . For VALUE RECEIVED, the undersigned hereby does convey, assign, transfer and set over to: SPECIALIZED LOAN SERVICING LLC , 8742 LUCENT BLVD SUITE 300 , HIGHLANDS RANCH, CO 80129 , assignee, the described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for $172000.00 is recorded in the State of CA , County of Contra Costa Official Records, dated 03/27/1995 and recorded 03/31/1995 , as Instrument No. 95 050811

Executed by EVERETT E. SANDERS AND ANGELA E. SANDERS, HUSBAND AND WIFE , as Trustors and THE PRUDENTIAL HOME MORTGAGE COMPANY, INC. as the original beneficiary. Legal Description: As more fully described in said Deed of Trust.

Dated: 02/12/2019
WELLS FARGO BANK, N.A.

By: THOMAS SUTSADA SANANIKONE Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } S.S.

On 02/12/2019 before me, YVES AKARA KENAO , a Notary Public, personally appeared THOMAS SUTSADA SANANIKONE , Vice President Loan Documentation of WELLS FARGO BANK, N.A. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

YVES AKARA KENAO, Notary Public
Expires: 01/31/2022

YVES AKARA KENAO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

*Exh-C - § 1p*

# EXHIBIT 8

Recording Requested by: Simplifile
Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650



Electronically Recorded
CONTRA COSTA Co Recorder Office
DEBORAH COOPER, Clerk-Recorder
**DOC - 2021-0127272**
Wednesday, Apr 28, 2021 07:51:00
SB2 Fee: $75.00
Total Paid: $95.00          Receipt #: 202100094558
1224 - SIMPLIFILE Meridian Asset Service          220 / ABPC / 1-2

_____ Space above for Recorder's use _____

Loan No: 3801456

13560743

*Not the right loan #*

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPECIALIZED LOAN SERVICING LLC**, whose address is **6200 S QUEBEC ST, GREENWOOD VILLAGE, CO 80111**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 3/27/1995
Original Loan Amount: $172,000.00
Executed by (Borrower(s)): EVERETT E. SANDERS & ANGELA E. SANDERS
Original Trustee: FIDELITY NATIONAL TITLE INSURANCE COMPANY
Original Beneficiary: THE PRUDENTIAL HOME MORTGAGE COMPANY, INC.
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 95 050811 in the Recording District of Contra Costa, CA, Recorded on 3/31/1995.

Property more commonly described as: 601 NAPA AVENUE, RODEO, CALIFORNIA 94572

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 4/8/2021

SPECIALIZED LOAN SERVICING LLC, BY FAY SERVICING, LLC, ITS ATTORNEY-IN-FACT

By: Angela Smith
Title: Assistant Secretary

Witness Name: MICHAEL HERMONAT

3801456 Freddie Mac NPL 2020-1 13560743

Exhibit D
2 pages

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **TEXAS**
County of **DALLAS**

On _____4·2·2⁊_____, before me, **MARY CHAVARRIA**, a Notary Public, personally appeared ____Angela Smith____, ____Assistant Secretary____ of/for **FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR SPECIALIZED LOAN SERVICING LLC,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify ____Angela Smith____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_Mary Chavarria_
**MARY CHAVARRIA**
(Notary Name):
My commission expires: 3·31·25

MARY CHAVARRIA
Notary Public, State of Texas
Comm. Expires 03-31-2025
Notary ID 126110395

3801456 Freddie Mac NPL 2020-1 13560743



## msn. ® Hotmail®

| | |
|---|---|
| **From :** | <Dana.Guandolo@wellsfargo.com> |
| **Sent :** | Tuesday, February 3, 2004 4:50 AM |
| **To :** | eva_bright@freddiemac.com |
| **CC :** | angelasandrs@hotmail.com, Rufus_Meyers@freddiemac.com |
| **Subject :** | RE: Reusal to Allow Me to Reinstate My Loan - FM # 745964427 /// Wells #3568545 |

```
    Yes, I did. Edward said she was sent the reinstatement last week and it was
    emailed to her again yesterday as well.
    Thanks

    > -----Original Message-----
    > From:    eva_bright@freddiemac.com  [SMTP: eva_bright@freddiemac.com]
    > Sent:    Monday, February 02, 2004 6:28 PM
    > To:      Dana.Guandolo@wellsfargo.com
    > Cc:      angelasandrs@hotmail.com; Rufus_Meyers@freddiemac.com
    > Subject:       RE: Reusal to Allow Me to Reinstate My Loan - FM # 745964427
    > /// Wells #3568545
    >
    >
    > Hi Dana,
    >
    > Have you heard from the attorney's office as yet?
    >
    > Please advise.
    >
    > Thank you.
    >
    >
    > Eva M. Bright
    > Servicing Default Specialist - Sr
    > Special Assets Unit
    > Mortgage Sourcing, Operations
    >  and Funding
    >
    > Tel: (703) 918-5109
    > Fax: (703) 918-5147
    > e-mail: eva_bright@freddiemac.com
    >
    >
    >
    >         Dana.Guandolo@wellsfargo.com
    >
    > 02/02/2004 10:00 AM
    >
    >         To:     angelasandrs@hotmail.com
    >         cc:     eva_bright@freddiemac.com
    >         Subject:       RE: Reusal to Allow Me to Reinstate My Loan
    >
    >
    >
    > Ms. Sanders,
    > I will be in touch with you later on today via email regarding your
    > account.
    >
    > We are located in Fort Mill, SC and the attorney's office is three hours
    > behind us. They open at 9 am west coast time and that is noon here on the
    > east coast. Once I speak to the attorney's office, I will respond to you.
    > Thank you
    >
```

*Exhibit E*